UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| F.E. MORAN, INC., ) | |
| ) | Case No. 22-cv-06421 |
| Plaintiff, ) | |
| ) | Judge Sharon Johnson Coleman |
| v. ) | |
| ) | |
| JOHNSON CONTROLS, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM ORDER AND OPINION**

Plaintiff F.E. Moran, Inc. filed a ten-count Complaint against Defendant Johnson Controls, Inc., seeking costs and damages incurred from Defendant's alleged supply of malfunctioning heat pumps, refusal to remediate the heat pumps, and defamatory statements made against Plaintiff. This transaction involving heat pumps is a sale of goods governed by Article 2 of Illinois' Uniform Commercial Code ("UCC"). Currently before the Court is Defendant's motion to dismiss all counts under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth, the motion to dismiss [17] is granted in part and denied in part. The motion is granted with respect to Counts II, III, IV, VII(a), VIII and denied with respect to Counts I, V, VI, VII, IX.[1]

**Background**

Plaintiff F.E. Moran, Inc. ("Moran") is an industrial and commercial mechanical contractor that supplies and installs heating, ventilation, and air conditioning ("HVAC") systems. Defendant Johnson Controls, Inc.'s ("JCI") is a manufacturer of HVAC equipment.

---

[1] In the Complaint, Plaintiff mistakenly listed two different counts as "Count VII." Here, the Court will refer to the claim for breach of express warranty (assigned from Ochoa) as "Count VII" and the claim for breach of implied warranty of merchantability (assigned from Ochoa) as "Count VII(a)."

1

This dispute is regarding malfunctioning heat pumps[2] used in the construction of One Chicago Square Project (the "Project"), a high rise building in Chicago, Illinois. The Project is owned by OCS Property Owner LLC ("Owner"), who hired Power Residential, LLC ("Power"), as the general contractor. (Dkt. 1, at 1.) In January 2019, Power selected Moran as a subcontractor to supply and install heating systems for the Project. (Dkt. 1, at 4.)

Although the precise nature of the contractual relationship between Moran and JCI is not immediately clear from the face of the complaint, the following facts are accepted as true. In January 2019, Moran sought price and delivery quotes from multiple heat pump manufacturers, including JCI. (Dkt. 1, at 4.) Moran and JCI engaged in written and oral communications, discussing whether JCI's heat pumps would meet the design and performance specifications of the Project (hereinafter, the "Mechanical Specification"). (Dkt. 1, at 5-6.) JCI provided price quotes stating promises and representations, including that JCI's heat pumps could meet the Mechanical Specification requirements and that JCI would provide a warranty of eighteen (18) months for the heat pumps, and an additional five (5) year warranty for the compressor. (Dkt. 1, at 7.) On February 19, 2019, Moran selected JCI as the heat pump supplier for the Project. (Dkt. 1, at 8.) Afterwards, Moran and JCI continued to collaborate on design of the heat pumps, including selecting specific heat pump sizes and models. (Dkt. 1, at 9.) JCI provided mockups of the heat pump units and systems, and Moran approved the selected heat pumps. (Dkt. 1, at 9.)

Based upon its selection of JCI as the supplier of heat pumps, Moran negotiated its contract with Power ("Moran Subcontract"), finalizing the terms on March 11, 2019. (Dkt. 1, at 8.)

In July 2019, Power and Moran agreed to use a subcontractor, Ochoa Mechanical Services, Inc. ("Ochoa"), as an intermediary in purchasing and installing the heat pumps. (Dkt. 1, at 9.)

---

[2] "Heat pumps offer an energy-efficient alternative to furnaces and air conditioners . . . [and they use] electricity to transfer heat from a cool space to a warm space, making the cool space cooler and the warm space warmer." *Heat Pump Systems*, U.S. DEPT. OF ENERGY, https://www.energy.gov/energysaver/heat-pump-systems.

Moran subcontracted with Ochoa to furnish the heat pumps. (Dkt. 1, at 9.) In August 2019, JCI sent Ochoa a four-page price quotation document ("Quotation") for the heat pumps, with the final page listing Terms and Conditions ("T&C"). (Dkt. 19-1, at 5-8.) Ochoa responded with an order (the "Purchase Order") for 1238 units of Vertical Stack Water Source Heat Pumps in various sizes. (Dkt. 1-3, at 2.) JCI manufactured the heat pumps and delivered them directly to the Project, and Ochoa installed them. (Dkt. 1, at 10.) JCI representatives periodically visited the Project to inspect Ochoa's installation of the heat pumps. (Dkt. 1, at 10.)

After installation, the heat pumps were turned on and tested, and it was determined that the size 015 heat pumps ("Series 15 Heat Pumps"), of which 287 units were ordered, were malfunctioning and experiencing several operational issues including excessive vibration and noise, disconnection of discharge lines, capillary tubes, or wiring, and accelerated refrigerant loss. (Dkt. 1, at 10-11, 14.)

Moran notified JCI of the malfunctioning pumps, and learned that JCI no longer produced Series 15 Heat Pumps. (Dkt. 1, at 11.) From January 2022 to August 2022, Moran was active in investigating and attempting to repair the heat pumps. (Dkt. 1, at 11.) JCI was not involved in attempting to repair the pumps until June 2022, when JCI committed to designing a mitigation measure. (Dkt. 1, at 13.) In August 2022, JCI submitted a mitigation design and committed to installation, but in September 2022, JCI withdrew the offer of installation and only delivered the mitigation-related equipment, and Moran assembled the mitigation measure. (Dkt. 1, at 13.)

Owner and Power were dissatisfied with the malfunctioning Series 15 Heat Pumps, and Power withheld payment from Moran. (Dkt. 1, at 11.) Due to the complications with this Project's heat pumps, Power decided not to subcontract with Moran on a future project for which Moran had already won the bid. (Dkt. 1, at 12.) Moran demanded that JCI pay costs and damages relating to the heat pump issues, but JCI refused. (Dkt. 1, at 14-15.)

3

In September 2022, Ochoa and Moran entered into an agreement ("Assignment Agreement"). (Dkt. 1-4, at 2.) "In exchange for Moran agreeing to pursue litigation directly against JCI for issues with the JCI Heat Pumps rather than pursuing litigation against Ochoa," Ochoa assigned to Moran all express and implied warranties given to Ochoa by JCI and the right to enforce claims against JCI. (Dkt. 1-4, at 3.)

From August 2022, JCI and Moran engaged in written settlement communications initiated by JCI. (Dkt. 1, at 15.) In September 2022, Kaitlin Birkett, JCI's General Manager for the Chicago metro area, sent a letter ("Letter") to Owner and Power—neither of which had a contract with JCI. (Dkt. 1, at 16.) In the Letter, JCI stated the Letter's purpose to be "notice that . . . [JCI is] in full and complete satisfaction of any obligations arguably owed by JCI . . . at the One Chicago Square Project." (Dkt. 1-5, at 2.) The Letter noted "Moran's failure to follow warranty claim procedures, and the various installation issues and field modifications made by Moran that voided the original warranty." (Dkt. 1-5, at 5.) Owner and Power informed Moran that they received and reviewed the statements made in the Letter. (Dkt. 1, at 20.) Thereafter, Moran brought this ten-count complaint against JCI for costs and damages resulting from the malfunctioning heat pumps.

**Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529, 131 S. Ct. 1289, 179 L. Ed. 2d 233 (2011). When considering dismissal of a complaint, the Court accepts well pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, the plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint is facially plausible when the plaintiff alleges enough "factual

4

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Mere recitations of the elements of a cause of action in a conclusory fashion are not sufficient to survive a motion to dismiss. *Id.*

In considering a motion to dismiss under Rule 12(b)(6), district courts are free to consider "any facts set forth in the complaint that undermine the plaintiff's claim." *Hamilton v. O'Leary*, 976 F.2d 341, 343 (7th Cir.1992) (quoting *R.J.R. Services Inc. v. Aetna Casualty & Surety Co.*, 895 F.2d 279, 281 (7th Cir.1989)). Where an exhibit and the complaint conflict, the exhibit typically controls. *Forrest v. Universal Savings Bank, F.A.,* 507 F.3d 540, 542 (7th Cir. 2007).

**Discussion**

The Complaint sets forth ten counts, including claims for breach of express warranty (Counts I and VII), breach of implied warranty of merchantability (Counts II and VII(a)), breach of implied warranty of fitness for a particular purpose (Counts III and VIII), promissory estoppel (Count IV), defamation (Count V), commercial disparagement (Count VI), and breach of contract (Count IX). JCI provided exhibits in its motion to dismiss, including a document that included warranty terms and a warranty disclaimer that JCI argues is a part of its contract with Ochoa. The Court agrees, and in light of the disclaimer, which expressly disclaims all implied warranties, all claims involving implied warranties—Counts II, III, VII(a), VIII—are dismissed under Rule 12(b)(6). Additionally, the claim for promissory estoppel, Count IV, is dismissed because there is an express contract. For the remaining claims, the motion to dismiss is denied.

    I.    <u>Materials Outside Complaint</u>

Included with JCI's motion to dismiss are several new documents not affixed to Moran's complaint: emails between counsel of JCI and Moran and an email between JCI and Ochoa with a Quotation and "Standard Terms and Conditions" ("T&C") attached.

5

The Court must make a threshold determination whether to consider any of these documents in deciding the motion to dismiss. The Seventh Circuit has been "relatively liberal" in applying the rule articulated in *Tierney v. Vahle*, holding that a court may consider an outside document if it is "concededly authentic" and central to the plaintiff's claim. *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). However, if the court determines a more attenuated connection between any documents and the complaint, then the court may "exclude the documents . . . and continue under Rule 12." *See Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783 (N.D. Ill. 2022) (Pallmeyer, J.) (citing *Macias v. Bakersfield Rest., LLC*, 54 F. Supp. 3d 922, 926–27 (N.D. Ill. 2014) (Castillo, C. J.)).

Moran objects to the authenticity of the documents, arguing that they are not notarized and that some emails and an attachment were partially redacted. It also argues that these documents were not referenced in the Complaint nor central to its claims. JCI argues that Moran has not presented good faith grounds to question the authenticity of the documents, and provided with its reply brief an unredacted version of the exhibits with an offer to notarize.

The Court finds that the Quotation and the T&C are central to Moran's claims and integral to determining the contractual relationship between Moran and JCI. Indeed, as explained below, these documents are a part of the contractual agreement between JCI and Ochoa, a key player in the underlying events. Additionally, although best practice may be to include affidavits to documents attached to a motion to dismiss, the Court finds no good faith reason to doubt the authenticity of the documents here. Thus, the Court will consider the Quotation with the T&C in determining the motion to dismiss.

The Court does not find any of the emails attached in exhibits to JCI's motion to dismiss to be central to Moran's claims, and thus, does not consider any of these emails in deciding the motion.

    II.    <u>Defining the Contract, Warranty Terms, and Warranty Disclaimer</u>

Since the Court will introduce the Quotation with T&C in deciding the motion to dismiss, the Courts lay out its understanding of the relevant contractual agreements before analyzing the individual counts.

Moran alleges the contractual relationship between Ochoa and JCI to include the Mechanical Specification and promises made through price quotes sent between Moran and JCI. JCI disagrees, arguing that only the T&C apply because the T&C state that: "Quotation and the related terms and conditions referred to in the Quotation shall constitute the entire agreement."

A party is presumed to know the contents of a contract it has agreed to, especially where the terms were not illegible or buried in the text such that there may be an inference of fraud. *Ace Am. Ins. Co. v. Wendt*, LLP, 724 F. Supp. 2d 899, 903 (N.D. Ill. 2010) (Bucklo, J.). Unless an acceptance is expressly made conditional on assent to additional or different terms, a definite and seasonable expression of acceptance can operate as an acceptance of the terms offered. *See* 810 ILCS 5/2-207.

Here, the contract ("Agreement") between Ochoa and JCI includes the Quotation—an offer—and the Purchase Order—an acceptance. Because the T&C and price quotation were all sent in a single four-page attachment with an identical document border, the T&C is a part of the Quotation and thus lays out the terms of the offer. Since the Purchase Order did not expressly state additional or different terms that make assent conditional, the Purchase Order was an acceptance to the terms laid out in the Quotation.

Moran also argues that T&C were not conspicuous as required by the UCC. 810 ILCS 5/2-316. Whether a disclaimer is conspicuous, and therefore effective against the plaintiff, is a question of law for the Court. *See New England Speed Factory, LLC v. Snap-On Equip., LLC*, 430 F. Supp. 3d 377, 382 (N.D. Ill. 2019) (Cole, J.) (citations omitted). "[T]he test for conspicuousness in a business transaction is whether a reasonable business person is expected to notice the disclaimer." *GFRB, LLC v. Worthy Promotional Prod.*, LLC, 624 F. Supp. 3d 959, 969 (N.D. Ill. 2022) (Kendall, J.) (citing

7

*Accurate Transmissions, Inc. v. Sonnax Indus.*, Inc., 2007 WL 1773195, at *3 (N.D. Ill. June 14, 2007) (Ashman, J.)). A warranty disclaimer is generally considered conspicuous when it is printed in all capital letters. *Cole v. U.S. Capital*, 389 F.3d 719, 730 (7th Cir. 2004).

Here, the document at issue is only four pages, with standard warranty terms on the second page and a warranty disclaimer on the fourth page. The disclaimer is in black all-caps bolded text on a white page. Additionally, Moran does not contend that Ochoa did not see the T&C or warranty disclaimer language. *See, e.g., New England Speed Factory, LLC v. Snap-On Equip., LLC*, 430 F. Supp. 3d 377 (N.D. Ill. 2019) (Cole, J.) ("[P]laintiff does not even argue that it did not see the disclaimer"); *Tatom v. Ameritech Corp.*, 305 F.3d 737, 743 (7th Cir. 2002) (Plaintiff "suggests that the disclaimer is not sufficiently conspicuous, although he does not contend that he never saw the notice."). As a matter of law, the disclaimer was not hidden and a reasonable business entity ought to have noticed the disclaimer. Thus, the Court finds the warranty disclaimer in the T&C to be conspicuous within the meaning of UCC § 2-316.

Accordingly, in light of accepting the Quotation with T&C as a part of the Agreement between JCI and Ochoa, the Court will consider the following warranty (Dkt. 19-1, at 6.) and warranty disclaimer (Dkt. 19-1, at 6.) in deciding the motions to dismiss:

> Standard Warranty
> - 18 months from shipment parts only (DOA Labor 30 days from startup to repair included)
> - Compressor – 5 year parts
>
> Seller warrants that the product and equipment furnished by Seller under the Agreement will be of good quality and that the services provided by Seller will be provided in a good and workmanlike manner . . . This limited warranty does not cover failures caused in whole or in part by (i) improper installation or maintenance performed by anyone other than Seller . . . To qualify for warranty consideration for products or equipment, at the earlier of the Buyer's discovery of the defect or the time at which the Buyer should have discovered the defect; Buyer must immediately notify Seller in writing for instructions on warranty procedures. Seller's sole obligation for defective services shall be to repair or to replace defective parts or to properly redo defective services . . . **THIS WARRANTY IS EXCLUSIVE AND IS**

8

**PROVIDED IN LIEU OF ALL OTHER EXPRESS OR IMPLIED WARRANTIES INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, WHICH ARE HEREBY DISCLAIMED.**

III.     <u>Breach of Express Warranty</u>

In Count I, Moran alleges that JCI breached express warranties made to Moran, including that JCI's heat pumps (1) are compliant with the Mechanical Specification; (2) meet the specific needs of residential units (3) have adequate measures to dampen vibration and noise; (4) are appropriate for use on this Project; (5) are "in conformance with applicable codes, laws, ordinances and agency standards of governing bodies having jurisdiction, and in strict accordance with contract documents"; (6) if defective, will be replaced at no cost within one year from the date of final acceptance of the Project; and, (7) will be repaired or replaced within eighteen (18) months, with any defective compressors repaired or replaced within five (5) years, of delivery. Moran also alleges that JCI warranted and promised to Moran and Ochoa that the heat pumps would meet the requirements in the Mechanical Specification, and that within the Quotation, the standard warranty language contradicts with the warranty disclaimer.

JCI argues that Moran did not buy the Heat Pumps from JCI, and thus, does not have contractual privity to pursue express warranty claims. JCI also denies that express warranties and promises were made, and even if they had been made, argues that they would have been superseded by the Agreement governing JCI's sale of the pumps to Ochoa: in JCI's Quotation to Ochoa, there was a limited parts-only express warranty for 18 months from shipment (Dkt. 19-1, at 6.), while the T&C page provided a warranty that the product will be of "good quality" and expressly disclaimed all other express warranties (Dkt. 19-1, at 6.).

Here, there are two issues: (1) whether Moran has the requisite privity to bring a breach of express warranty claim, and (2) if so, whether there was a breach of express warranty.

9

In Illinois, a plaintiff bringing a breach of express warranty claim must have privity to the contract—*i.e.* "the party suing has some contractual relationship with the one sued." *Caterpillar, Inc. v. Usinor Industeel*, 393 F. Supp. 2d 659, 677 (N.D. Ill. 2005) (Pallmeyer, J.) (citing *Crest Container Corp. v. R.H. Bishop Co.*, 445 N.E.2d 19, 25 (1st Dist. 1982)). Illinois courts recognize two exceptions to the privity requirement. First, the direct dealing exception allows express warranty claims to bypass the privity requirement "which applies when there are direct dealings between the manufacturer and the remote customer," *Elward v. Electrolux Home Prod.*, Inc., 214 F. Supp. 3d 701, 705 (N.D. Ill. 2016) (Lee, J.), and the manufacturer "expressly warranted its goods to the ultimate consumer, and this was the basis for the bargain that was relied upon by plaintiffs. *Bakopoulos v. Mars Petcare US, Inc.*, 592 F. Supp. 3d 759, 765 (N.D. Ill. 2022) (Shah, J.) (citing *Rosenstern v. Allergan, Inc.*, 987 F.Supp.2d 795, 805 (N.D. Ill. 2013)).

Moran, although not the end-consumer, alleges direct dealings with JCI via the price quotes, related communications, and assistance with design. However, JCI correctly argues that the direct dealings exception is limited to the end consumer, which cannot plausibly be Moran, a subcontractor. Thus, the direct dealings exception does not apply.

Second, the third-party beneficiary exception allows express warranty claims to bypass the privity requirement if "the manufacturer knew the identity, purpose and requirements of the dealer's customer and manufactured or delivered the goods specifically to meet those requirements." *Frank's Maintenance & Eng'g, Inc. v. C.A. Roberts Co.*, 86 Ill.App.3d 980, 42 Ill.Dec. 25, 408 N.E.2d 403, 412 (1st Dist. 1980). For a non-party to qualify as a third-party beneficiary, the contract must expressly indicate that "the contract was made for the direct, not merely incidental, benefit of the third person." *Sosa v. Onfido, Inc.*, 8 F.4th 631 (7th Cir. 2021) (quoting *Martis v. Grinnell Mut. Reinsurance Co.*, 388 Ill.App.3d 1017, 329 Ill.Dec. 82, 905 N.E.2d 920, 924 (3rd Dist. 2009)). An incidental beneficiary is a non-party to the contract who "receives a benefit from the contract unintended by

the contracting parties." *Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921 (7th Cir. 2003), *as amended on denial of reh'g* (Apr. 3, 2003) (citations omitted). To determine whether Moran is a direct or incidental beneficiary with enforceable rights under the Agreement, the Court must analyze the purposes underlying the formation of the Agreement. *See Holbrook v. Pitt*, 643 F.2d 1261 (7th Cir. 1981). Due to "the fact-intensive nature" of the privity inquiry, *In re L & S Indus., Inc.*, 989 F.2d 929, 932 (7th Cir. 1993), a determination as to whether privity exists is typically inappropriate at the motion-to-dismiss stage. *See Elward v. Electrolux Home Prods., Inc.*, 214 F. Supp. 3d at 705; *Apex Mgmt. Corp. v. WSR Corp.*, 225 B.R. 640, 646 (N.D. Ill. 1998) (Castillo, J.).

Moran alleges that JCI knew Moran's specifications for the heat pumps and manufactured the heat pumps knowing that the immediate purchaser, Ochoa, was an intermediary for Moran. In the Complaint, Moran highlights that

> JCI selected the size and type of heat pumps as part of its design-assist activities performed for and with Moran, submitted technical specifications for the heat pumps to Moran, and engaged in numerous communications with Moran concerning the pump specifications. JCI [had] authority to decide which pumps to purchase to complete the heating system for the Project, and armed with such knowledge, made representations to Moran in order to become the supplier of $2.5 million in heat pumps. (Dkt. 1, at 9-10.)

JCI argues that the third-party beneficiary exception only applies to the end-user of the heat pumps, which in this case, would be the building owner, or the individual purchasers/owners of condominium units in the building where the Heat Pumps were installed. However, this Court finds the third-party beneficiary exception applies to buyers along the distributive chain. The third-party exception contemplates the existence of a buyer-seller relationship "or its essential equivalent," *Banco Del Estado v. Navistar Intern. Transp. Corp.*, 954 F. Supp. 1275, 34 U.C.C. Rep. Serv. 2d 467 (N.D. Ill. 1997) (Shadur, J.), which is not always limited to the end user. *Hemphill v. Sayers*, 552 F. Supp. 685 (S.D. Ill. 1982) (assessing that Illinois courts had expanded the third-party beneficiary exception

from the express class listed in UCC Section 2–318 Official Comment 3 to more broadly apply to "plaintiffs in the distributive chain").

Given the fact-intensive nature of the privity inquiry, which in this case includes discerning the purposes underlying the formation of the Agreement, the Court finds that the Moran's allegations state a plausible claim that the third-party beneficiary exception applies, such that Moran can bring forth a breach of express warranty claim.

If the parties have contractual privity, Illinois law requires plaintiffs suing for breach of warranty to allege "(1) the terms of the warranty; (2) a breach or failure of the warranty; (3) a demand upon the defendant to perform . . . ; (4) a failure by the defendant to do so; (5) compliance with the terms of the warranty by the plaintiff; and (6) damages." *GFRB, LLC*, 624 F. Supp. at 968 (quoting *Van Zeeland v. Rand McNally*, 532 F. Supp. 3d 557, 564–65 (N.D. Ill. 2021) (Valderrama, J.)). "Since express warranties are contractual in nature, the language of the warranty itself is what controls and dictates the obligations and rights of the various parties." *Medline Indus., Inc. v. Ram Med., Inc.*, 892 F.Supp.2d 957, 968 (N.D.Ill.2012) (Lefkow, J.) (citing *Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc.*, 372 Ill. App. 3d 354, 865 N.E.2d 334 (2007)).

The disclaimer of an express warranty is permitted, but words negating or limiting an express warranty shall be construed wherever reasonable as consistent with words and conduct relevant to the creation of an express warranty. 810 ILCS 5/2-316. Subject to UCC provisions on parol or extrinsic evidence, if the negation or limitation of an express warranty would be unreasonable, then it is inoperative. *Id.* "[A] written disclaimer of an express warranty contained elsewhere in the same contract is generally inoperable," unless parol evidence indicates that it would be reasonable to construe the disclaimer as negating the express warranty. *AAR Int'l, Inc. v. Vacances Heliades S.A.*, 202 F. Supp. 2d 788, 795 (N.D. Ill. 2002) (Bucklo, J.) (quoting *Lake Bluff Heating & Air Conditioning Supply, Inc. v. Harris Trust & Sav. Bank*, 117 Ill.App.3d 284, 72 Ill.Dec. 665, 452 N.E.2d 1361, 1367

12

(2nd Dist. 1983)). The purpose of this UCC provision is to "protect a buyer from *unexpected* and *unbargained* language of [an express warranty] disclaimer" (emphasis added). 810 ILCS 5/2-316, Illinois Code Comment, subsection (1). Disclaiming express warranties that formed the basis of the bargain would be unreasonable, as it would undermine the parties' very agreement. *GFRB*, F. Supp. 3d at 968.

Since disclaiming an express warranty contained elsewhere in the same contract is generally inoperable, here, JCI's standard warranty terms control over the warranty disclaimer. The negation or limitation of the standard warranty terms would be unreasonable, because the more specific standard warranty terms were contained on an earlier page of the same contract.

There is also the issue of whether the express warranty disclaimer is inoperable in light of the Mechanical Specification. Since Moran alleges that the basis of the bargain was JCI's warranties and promises to Ochoa and Moran that the heat pumps would meet the requirements in the Mechanical Specification, the standard warranty (to the extent it limits the Mechanical Specification requirements) and express warranty disclaimer may be inoperative. There is no evidence presented by either party that indicates it would be reasonable to construe the disclaimer as negating any express warranty to comply with the Mechanical Specification. Thus, drawing all reasonable inferences in favor of Moran, the Court denies the motion to dismiss Count I.

    IV.    <u>Breach of Express Warranty - Assigned from Ochoa</u>

In Count VII, Moran asserts that JCI breached an express warranty to Ochoa. Due to the Assignment Agreement, which transfers rights from Ochoa to Moran, Moran has the right to enforce JCI's contract obligations and enforce this claim against JCI.

Moran alleges that JCI warranted and promised Ochoa that JCI's heat pumps would meet the requirements in the Mechanical Specification. JCI argues that the T&C in the Quotation

disclaimed any other express warranties, and that the "parts only" warranty was fulfilled by JCI providing parts to remedy excessive vibration and noise in August of 2022.

Applying Illinois law on express warranties from the previous section, since Moran alleges that JCI made an express warranty to Ochoa that JCI's heat pumps would comply with the Mechanical Specification, and this formed the basis of their bargain, Moran makes a plausible claim that there was a breach of express warranty. Thus, the Court denies the motion to dismiss Count VII for breach of express warranty.

> V. <u>Breach of Implied Warranty</u>

Counts II and III allege breaches of implied warranties owed directly to Moran. In Count II, Moran alleges breach of the implied warranty of merchantability. Moran argues that JCI is an international heat pump merchant, and its heat pumps malfunctioned, exhibiting refrigerant leaks, vibration, and noise that were not suitable for Moran's purposes in this Project.

In Count III, Moran alleges a breach of the implied warranty of fitness for a particular purpose. Moran argues that JCI was aware of the Mechanical Specification requirements and the particular use and purpose of the heat pumps—to be installed in residential apartments and condominiums. Additionally, Moran argues that because JCI was involved in the design-assist process, JCI knew that Moran was relying on JCI's expertise to provide the appropriate heat pumps. For both Counts, Moran argues that because JCI knew of the Project's specific requirements, Moran is a third-party beneficiary of implied warranties.

Both implied warranty claims fail because even though Moran may be a third-party beneficiary, the contract contained valid disclaimers. A seller may "'exclude or modify the implied warranty of merchantability or any part of it" by using language that "must mention merchantability and in case of a writing must be conspicuous." *Accurate Transmissions, Inc. v. Sonnax Indus., Inc.*, 2007 WL 1773195, at *2 (N.D. Ill. June 14, 2007) (Ashman, J.) (citing 810 ILCS 5/2-316(2)); *see also Horne*

14

*v. Elec. Eel Mfg. Co., Inc.*, 987 F.3d 704, 724 (7th Cir. 2021) ("[P]arties to a contract may bargain away rights to an implied warranty of merchantability."). "Unlike the implied warranty of merchantability, implied warranties of fitness for a particular purpose may be excluded by general language, but only if it is in writing and conspicuous." 810 ILCS 5/2-316, Illinois Code Comment, subsection (4).

Here, the T&C disclaims: "ALL . . . IMPLIED WARRANTIES INCLUDING . . . ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE." (Dkt. 19-1, at 6.) JCI thus excluded any implied warranty of merchantability through a conspicuous disclaimer that mentions the term "merchantability." JCI also disclaimed excluded the implied warranty for a particular purpose in writing and in a conspicuous manner. The Court thus dismisses Counts II and III.

VI. <u>Breach of Implied Warranty - Assigned from Ochoa</u>

Counts VII and VII(a) allege breaches of implied warranties owed to Ochoa and assigned to Moran. Count VII alleges that JCI breached an implied warranty of fitness for a particular purpose to Ochoa, and assigned to Moran, and Count VII(a) alleges a breach of the warranty of merchantability owed to Ochoa and assigned to Moran. As explained above, because the T&C, which are a part of the contract between Ochoa and JCI, validly disclaim both the implied warranty of merchantability and the implied warranty of fitness for a particular purpose, Counts VII and VII fail and are therefore dismissed.

VII. <u>Promissory Estoppel</u>

In Count IV, Moran alleges that JCI is liable for promissory estoppel, because Moran relied on JCI in selecting it to supply the heat pumps according to the Mechanical Specification, in directing Ochoa to purchase the pumps, and when agreeing to the Moran Subcontract. Moran alleges that due to JCI failure to fulfill its promises, it incurred substantial costs investigating, remediating, and repairing the heat pumps and even lost anticipated profit on a future project with

15

Power. Moran also claims that JCI should have known that Moran would rely on JCI, which is a worldwide distributor of heat pumps with an extensive history in manufacturing such pumps. JCI argues that the doctrine of promissory estoppel cannot be used to resuscitate warranties that were disclaimed or limited by a contract that covers the same matter.

To state a claim based upon promissory estoppel, a plaintiff must allege that the "(1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendant, and (4) plaintiff relied on the promise to its detriment." *Matthews v. Chi. Transit Auth.*, 51 N.E.3d 753, 780 (Ill. 2016). "Under Illinois law, a claim for promissory estoppel will only succeed where all the other elements of a contract exist, but consideration is lacking." *Dumas v. Infinity Broad. Corp.*, 416 F.3d 671, 677 (7th Cir. 2005); it follows that "[w]hen there is an express contract governing the relationship out of which the promise emerged, and no issue of consideration, there is no gap in the remedial system for promissory estoppel to fill," because "[p]romissory estoppel is not a doctrine designed to give a party . . . a second bite at the apple in the event that it fails to prove a breach of contract." *All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 869–70 (7th Cir. 1999) (citations omitted). Promissory estoppel cannot be used to circumvent principles of contract law. *Id.* Thus, "once it is determined an enforceable contract exists then a party can no longer recover under a promissory estoppel theory." *Bohling v. Pharmacia Corp.*, 156 F. Supp. 2d 1010, 1017 (N.D. Ill. 2001) (Denlow, J.).

Here, there are two express contracts governing the relationship out of which the promise emerged—the contract for purchase of heat pumps from JCI by Ochoa, and the contract for purchase of heat pumps from Ochoa by Moran. Simply put, promissory estoppel cannot be used to resuscitate a warranty that has been disclaimed. Since there is an enforceable contract that governs the sale of the heat pumps, there is no gap in the remedial system for promissory estoppel to fill. Count V is therefore dismissed.

    VIII.    <u>Defamation, Libel Per Se, and Commercial Disparagement</u>

In Count V, Moran alleges that JCI is liable for defamation or libel per se, because in a Letter sent to Owner and Power on September 12, 2022, JCI's General Manager for the Chicago metro area made false, harmful statements about Moran. The allegedly false statements include that: (1) JCI was ready to start installation of piping weights and replacement of spade connectors on August 15, 2022, even though JCI later admitted it did not have the materials ready and available to start on that date, (2) installation deficiencies by Moran caused the excessive vibration and resulting noise, and (3) JCI previously identified and notified Moran of installation issues that would cause excessive vibration and resulting noise. (Dkt. 1, at 16-18.)

In Count VI, Moran alleges that JCI is also liable for commercial disparagement because that Letter to Owner and Power made false, disparaging statements specific to Moran's quality of services and workmanship as a mechanical subcontractor. These statements include that: (1) Moran improperly installed the heat pumps and (2) Moran failed to adhere to start up procedures even though Moran did not start up the heat pumps. (Dkt. 1, at 16-17.)

JCI moves to dismiss Counts V and VI, arguing that the Letter was protected by a qualified business privilege, and that JCI's communications were motivated by a legitimate business interest. JCI alleges that JCI provided advance notice of the Letter to Moran and sent the Letter in good faith to reasonably protect its own business reputation from being impugned by Moran.

To state a claim for defamation, a "plaintiff must present facts showing that the defendant made a false statement about the plaintiff, the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *L. Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1129 (7th Cir. 2022) (quoting *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill.2d 558, 304 Ill.Dec. 369, 852 N.E.2d 825, 839 (Ill. 2006)). Illinois recognizes two types of defamation claims: per quod and per se. *See Tuite v. Corbitt*, 224 Ill.2d 490, 310 Ill.Dec. 303, 866 N.E.2d 114, 121 (Ill. 2006). In a per se action, a plaintiff need not prove actual damages as the

17

statement's defamatory character is considered so "obvious and apparent on its face" that "injury to the plaintiff's reputation may be presumed." *Tuite*, 310 Ill.Dec. 303, 866 N.E.2d at 121. Five categories of statements that are defamatory per se, where damages are presumed without specific proof; those are words imputing to a person: (1) commission of a crime, (2) a "loathsome communicable disease," (3) a person's inability to perform or lack of integrity in performing employment duties, (4) that the person lacks ability in his profession or the words otherwise prejudice the person in his profession, and (5) adultery or fornication. *Pippen v. NBC Universal Media, LLC*, 2012 WL 12903167 at *1 (N.D.Ill., 2012) (Coleman, J.), *aff'd* 734 F.3d 610 (7th Cir. 2013).

A qualified privilege is an affirmative defense to a defamation claim. *Babb v. Minder*, 806 F.2d 749, 753 (7th Cir.1986) (citing *Fascian v. Bratz*, 96 Ill.App.3d 367, 51 Ill.Dec. 901, 421 N.E.2d 409, 412 (1981)). A complaint "need not anticipate or attempt to defuse potential defenses," but need only avoid pleading "itself out of court by alleging (and thus admitting) the ingredients of a defense." *U.S. Gypsum Co. v. Ind. Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003). Thus, "unless the complaint affirmatively shows the statement is privileged, a plaintiff is not required to plead facts demonstrating that a statement is unprivileged." *Kreith v. Am. Airlines, Inc.*, No. 20 C 1593, 2021 WL 780716, at *4 (N.D. Ill. Mar. 1, 2021) (Lee, J.) (quoting *United Labs., Inc. v. Savaiano*, No. 06 C 1442, 2007 WL 4557095, at *9 (N.D. Ill. Dec. 21, 2007) (Holderman, C. J.)). Here, the complaint does not affirmatively describe the existence of a qualified privilege, and as explained above, the Court has not at this stage admitted the email exhibits provided by JCI purporting to establish that privilege.

Here, Moran sufficiently pleads that JCI is liable for defamation through listing the allegedly false statements made by JCI in the Letter. The Court finds that Moran's claims fall within the categories of statements that are defamatory per se, such as Moran lacking ability in its profession. Thus, the Court denies the motion to dismiss Count V for defamation.

18

To state a cause of action for commercial disparagement, courts in this district have held that a plaintiff must plead that the defendant made false or misleading statements regarding the quality of defendants' goods and services. *Kallemeyn Collision Ctr., Inc. v. Standard Fire Ins. Co.*, 628 F. Supp. 3d 769 (N.D. Ill. 2022) (Leinenweber, J.); *Morningware, Inc. v. Hearthware Home Prod., Inc.*, 673 F. Supp. 2d 630 (N.D. Ill. 2009) (St. Eve, J.). Courts in this district have also held that commercial disparagement claims must be based on false statements of fact and cannot be based on expressions of opinion. *Evanger's Cat & Dog Food Co., Inc. v. Thixton*, 412 F. Supp. 3d 889, 903 (N.D. Ill. 2019) (Chang, J.) (citing *Freiburger v. Timmerman*, 2016 WL 4493448, at *15 (N.D. Ill. Aug. 26, 2016) (Shah, J.)).

Here, Moran sufficiently pleads that JCI is liable for commercial disparagement, because Moran provides a list of allegedly false statements JCI made that were specific to Moran's quality of services. The Court denies the motion to dismiss Count VI for commercial disparagement.

IX. <u>Breach of Contract Assigned from Ochoa</u>

In Count IX, Moran alleges that JCI is liable for breach of contract, because JCI breached the following contractual obligations to Ochoa: supplying heat pumps that properly functioned, were compliant with industry standards, and met Mechanical Specification requirements. Moran also alleges that JCI breached its obligations in the Purchase Order by failing to repair, remediate, or replace malfunctioning heat pumps, which resulted in costs to Moran. Since Ochoa has assigned Moran the rights to enforce Ochoa's Purchase Order, Moran is directly pursuing its damages against JCI. JCI argues that neither the Quotation nor Purchase Order reference or attach the Mechanical Specification, so the Mechanical Specification is not a part of the Agreement.

A breach of contract claim under Illinois law requires that Moran plead the following four elements: (1) the existence of a valid and enforceable contract, (2) Ochoa's substantial performance under the contract, (3) JCI's breach of that contract, and (4) damages resulting from the alleged

breach of contract. *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 886 (7th Cir. 2018). "Only a duty imposed by the terms of a contract can give rise to a breach." *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007) (citation omitted).

In its Complaint, Moran has identified specific requirements within the Mechanical Specification that JCI allegedly violated including that the "[p]roducts and execution shall be provided in conformance with applicable codes, laws, ordinances and agency standards of governing bodies having jurisdiction." (Dkt. 1, at 5.)  As noted earlier, Plaintiff has made a plausible claim that JCI breached an express warranty to Ochoa that the heat pumps would comply with the Mechanical Specification. Thus, the Court finds dismissal of Count IX for breach of contract unwarranted, and the motion is denied with respect to Count IX.

**Conclusion**

As explained above, Counts II, III, VII(a), VIII (the Counts alleging breaches of implied warranties) and Count IV are dismissed with prejudice. The motion to dismiss is denied, however, with respect to Counts I, V, VI, VII, and IX.

IT IS SO ORDERED.

Date: 10/5/2023

Entered: _____

SHARON JOHNSON COLEMAN
United States District Court Judge