UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| F.E. MORAN, INC., )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>JOHNSON CONTROLS, INC., )<br>)<br>    Defendant. ) | Case No. 22-cv-06421<br><br>Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiff F.E. Moran, Inc. ("Moran") originally brought a ten-count complaint against Defendant Johnson Controls, Inc. ("JCI"). After the Court granted in-part and denied in-part JCI's motion to dismiss, five counts remain. Before this Court is JCI's motion to compel arbitration. For the following reasons, the Court grants JCI's motion [31].

**Background**

Moran is an industrial and commercial mechanical contractor that supplies and installs heating, ventilation, and air-condition ("HVAC") systems. JCI manufactures HVAC equipment. The relevant contract and dispute concerns heating pumps for construction of One Chicago Square Project (the "Project"), a high rise building in Chicago, IL. OCS Property Owner, LLC ("Owner"), the owner of the project, hired Power Residential, LLC ("Power") as a general contractor. Power then chose Moran as a subcontractor to supply and install the heating systems. Moran in turn selected JCI as the heat pump supplier. Power and Moran then picked Ochoa Mechanical Services, Inc. ("Ochoa") as an intermediary to purchase and install the heat pumps.

During this time, Moran and JCI discussed whether JCI's heat pumps would meet the design and performance specifications of the Project ("Mechanical Specifications"). Moran claims that JCI

made several express warranties, before being selected, concerning the Mechanical Specifications—although the exact details of such warranties are not relevant to this opinion.

After being hired, JCI sent Ochoa a four-page price quotation for the heat pumps, with the final page listing Terms and Conditions ("T&Cs"). The T&Cs contain the following arbitration clause:

> DISPUTE RESOLUTION. Seller shall have the sole and exclusive right to determine whether any dispute, controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be submitted to a court of law or arbitrated. The venue for any such arbitration shall be in Milwaukee, Wisconsin.

Ochoa in turn ordered 1238 units of heat pumps, which Ochoa installed and JCI manufactured and delivered. Ultimately, many of the heat pumps malfunctioned. Owner and Power were obviously dissatisfied and withheld payment from Moran. JCI and Moran discussed creating a plan to get the heat pumps functioning, which was unsuccessful. Once Moran demanded costs and damages from JCI, JCI refused.

To avoid litigation, Ochoa assigned all express and implied warranties given to Ochoa by JCI and the right to enforce claims against JCI to Moran. After the parties' unsuccessful negotiations, JCI's General Manager sent a letter to the Owner and Power concerning JCI's obligations pursuant to the Agreement and the installation of pumps. Moran claims such statements were defamatory and disparaging. Ultimately, Power did not hire Moran for future projects, causing this suit to ensue.

Moran originally brought a ten-count complaint against JCI on November 16, 2022, which JCI moved to dismiss. In its motion to dismiss, JCI wrote in a footnote that "[t]he T&Cs also provide that JCI 'shall have the sole and exclusive right to determine whether any dispute, controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be submitted to a court of law or arbitrated' JCI expressly reserves the right to demand arbitration should any of Moran's claims survive this Motion." This Court granted in part and denied in part

JCI's motion, and five counts survived: breach of contract, as to Ochoa, breach of express warranty, as to Moran and Ochoa, and defamation and commercial disparagement, as to Moran.

As the Court explicitly stated in denying in part the motion to dismiss ("Decision"): the Quotation and T&Cs are a part of the contractual agreement between JCI and Ochoa. The Court explained: "the contract ('Agreement') between Ochoa and JCI includes the Quotation—an offer—and the Purchase Order—an acceptance," and further that "[b]ecause the T&C[s] and price quotation were all sent in a single four-page attachment with an identical document border, the T&C[s] is a part of the Quotation and thus lays out the terms of the offer. Since the Purchase Order did not expressly state additional or different terms that make assent conditional, the Purchase Order was an acceptance to the terms laid out in the Quotation." Also, because it is informative to this decision, one reason Moran's first-party express warranty claim survived JCI's motion to dismiss was due to the Court finding that Moran sufficiently alleged that the parties were in contractual privity, as the Agreement directly benefitted Moran.

After the Court issued its Decision, JCI filed its answer and affirmative defenses. In its affirmative defenses, JCI mentioned the parties have a valid arbitration agreement.[1] On November 15, 2023, the parties submitted a joint status report and proposed a discovery schedule. The status report also mentioned that JCI anticipated filing a motion to compel arbitration. To draft their joint report, the parties engaged in a lengthy 26(f) conference. During the conference, JCI apparently requested that the parties submit to arbitration.

After the parties appeared before this Court for a status hearing, this Court referred to case to a magistrate judge for discovery supervision and settlement. After reviewing the parties' joint status report, the magistrate judge then ordered for JCI to file its motion to compel by December 8,

---

[1] Because Moran's motion to strike JCI's affirmative defenses is still pending, the Court's decision will not depend or weigh in on JCI's affirmative defenses at this stage.

3

2023, or he would enter a schedule for written discovery. JCI moved to compel arbitration on December 8, 2023, which is now before this Court.

**Legal Standard**

Under the FAA, "[a] party aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* at § 2. Courts grant motions to compel arbitration when: (1) there is "an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018). In determining whether an agreement's arbitration clause controls, federal courts apply state-law principles of contract formation. *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 710 (7th Cir. 2019).

**Discussion**

Whether JCI has the right to enforce the arbitration agreement in the Agreement depends on the enforceability and scope of the agreement. However, the Court must first address whether JCI has waived its right to arbitrate through its litigation tactics.

Although JCI argues that the issue of waiver is reserved for an arbitrator, waiver is generally an issue for a court to decide. *See Lukis v. Whitepages Inc.*, 535 F. Supp. 3d 775, 784 (N.D. Ill. 2021) (Feinerman, J.). Moran believes that JCI decided to submit to this forum by (a) filing its initial motion to dismiss with prejudice, causing the Court to decide the case on the merits; (b) failing to immediately file its motion to compel and filing its answer and affirmative defenses after the Court issued its Decision; (c) engaging in the parties' 26(f) conference and submitting a joint status report,

which proposed a discovery schedule; and (d) delaying filing the motion to compel during 13 months of litigation.

JCI states that it did not waive its right to arbitration, as it was waiting on the Court to issue its Decision. JCI asserts that they reserved their right to arbitrate (a) in their motion to dismiss, (b) in their answer/ affirmative defenses, and (c) during the parties' 26(f) conference and in their joint status report.

As any other contractual rights, a party's right to arbitration can be waived, either expressly or impliedly through the party's conduct. *Smith v. GC Servs. L.P.*, 907 F.3d 495, 499 (7th Cir. 2018); *Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 952 F.3d 887, 891 (7th Cir. 2020). The core question for the Court when determining waiver is whether "based on all the circumstances, the party against whom the waiver is to be enforced has acted inconsistently with the right to arbitrate." *Brickstructures, Inc.*, 952 F.3d at 891(quoting *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 637 (7th Cir. 2002)). Important factors for the Court to consider is the diligence of the party seeking to enforce the arbitration provision, the party's delayed request, participation in litigation and discovery, and prejudice to the party asserting waiver (even though prejudice is not required). *See Paragon Micro, Inc. v. Bundy*, 22 F. Supp. 3d 880, 892 (N.D. Ill. 2014)(Castillo, J.). However, there is "[n]o rigid rule . . . as to what constitutes a waiver of the right to arbitrate. Instead, the issue depends on the circumstances of each particular case." *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prod. Co.*, 969 F.2d 585, 587 (7th Cir. 1992). Because of the strong federal policy favoring enforcement of arbitration agreements, "parties asserting waiver bear a 'heavy burden' and courts should not 'lightly infer' waiver." *Id.* at 590.

Moran does not assert that JCI expressly waived its right to arbitrate but rather contends that the Court can infer JCI acted inconsistently with the right to arbitrate, such that forfeiture occurred. The Court disagrees. The Court recognizes that JCI waited approximately 13 months to file its

motion to compel arbitration, and that throughout this time JCI filed a motion to dismiss, met with Moran for the 26(f) conference, drafted a status report, and filed an answer before moving to compel arbitration.  However, JCI stated in its motion to dismiss, 26(f) conference, and status report that it anticipated or had a right to arbitrate.  There was no "bombshell" here.  *See Cooper v. Asset Acceptance*, LLC, 532 F. App'x 639, 642 (7th Cir. 2013).

      Moran largely relies on *St. Mary's* to establish its burden that JCI waived its right to arbitration.  In *St. Mary's*, the Seventh Circuit affirmed the district court's decision to deny defendant's motion to compel arbitration.  *St. Mary's Med. Ctr. of Evansville, Inc.,* 969 F.2d at 585.

      The district court in *St Mary's* denied defendant's motion due to (a) the delay of the motion, (b) the fact that the defendant moved to dismiss the case or for summary judgment, and (c) that the defendant never mentioned its right to arbitrate until filing the motion to compel arbitration. *Id.* This case it quite different.  Here, there is only a motion to dismiss, not arising to a termination of the case just like after trial. *See Cooper v. Asset Acceptance, LLC*, 532 F. App'x 639, 641 (7th Cir. 2013). Although defendant requested the case be dismissed with prejudice, Plaintiff would have had leave to amend their complaint.  Although it may seem like *St. Mary's* tells the Court that when a party files a motion to dismiss that party agreed to submit to a court's forum, the Seventh Cricut has held such an action does not always show clear intent of waiver.  *Id.*  For instance, *St. Mary's* recognized in a complicated case with multiple counts and convoluted ideas, a motion to dismiss may need to be filed for the defendant to decide whether they are going to arbitrate or not.  *St. Mary's Med. Ctr. of Evansville, Inc.,* 969 F.2d at 589.  That certainly is the case here, where the original complaint contained ten counts, consisting of third-party and first-party claims, and includes claims Moran asserts are non-arbitrable.  Also, unlike St. Mary's, JCI mentioned its right to arbitration several times both orally and in writing.

Now, considering JCI's 13 month "delay," JCI was waiting for the Court to thoroughly determine JCI's motion to dismiss. It seems more appropriate to look at JCI's delay from the time the Court issued its opinion, which was approximately two months. Surely, such a timeframe is not contemplated as a delay requiring the Court to find JCI waived its right to arbitrate. Even more telling, the magistrate judge ordered for JCI to file its motion by December 8, 2023, which it did. It is irrational to hold that JCI waived its right to arbitrate when it complied with another judge's order.

Moran makes the argument that JCI put arbitration on the table and later took it off. But the Court does not believe that JCI ever took the issue off the table, as JCI stated it was deferring the motion and repeatedly mentioned its right. In *Brickstructures*, which Moran cites, the defendant expressly withdrew its motion and later tried to bring it back to life. *Brickstructures, Inc.,* 952 F.3d at 888. Such circumstance does not exist here.

Also, it is undisputed that the parties have not engaged in formal discovery and a discovery schedule has not been set. To the extent Moran asserts that informal discovery has taken place, it fails to cite to caselaw which support its proposition that informal discovery is sufficient to assert that parties engaged in discovery.

Lastly, Moran fails to assert how they would be prejudiced. Moran does state if the Court were to grant JCI's motion, it would "unilaterally erase Moran's successes." The Court is unconvinced by this argument, since the five claims that remain will still be determined by an arbitrator just as it would before the Court.

Moran has not established its high burden of showing that JCI waived its right to arbitrate. Therefore, the Court now assesses whether there is an enforceable arbitration agreement between the parties and if Moran's first-party claims are within its scope.

JCI argues that the T&Cs, which contain the arbitration clause, are enforceable as the Court has decided they are a part of the Agreement. Without citing to case law, Moran makes a barebones

7

response that it has disputed that the T&Cs are a part of the Agreement, as there was no meeting of the minds between Ochoa and JCI. Because the Court has already held that the T&Cs are a part of the Agreement and the Agreement between Ochoa and JCI was valid, an enforceable arbitration agreement exists as to Moran's third-party claims, i.e., Ochoa's claims.

The Court's analysis focuses on Moran's first party claims: defamation, commercial disparagement, and breach of express warranty. As JCI moves for arbitration, it argues that Moran is bound by Ochoa's and JCI's arbitration agreement as a third-party beneficiary and that Moran's first party claims fall within scope of the arbitration agreement because such claims are directly tied to the Agreement. JCI asserts that the arbitration provision's broad language "any dispute, controversy or claim arising out of or relating to the Agreement, or breach thereof," encompasses Moran's first party claims.

Moran responds (a) that it is not bound to the arbitration agreement as to its first party claims, because it was not a party to a contract, and non-parties may not be bound to an arbitration agreement, and (b) that its first party claims have nothing to do with contractual obligations.

The Court cannot require a party to submit to arbitration when the party has not agreed to do so. *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). However, when a valid contract exists, as it does here, a federal court may look at the following five doctrines to decide whether "a non-signatory can be bound by an arbitration agreement entered into by others: (1) assumption; (2) agency; (3) estoppel; (4) veil piercing; and (5) incorporation by reference." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005).

Although neither party extensively argues which doctrine applies here, the most obvious is estoppel. Moran forgets that it brought an express warranty claim—pursuant to receiving the direct benefit of the Agreement. Moran seeks to receive the benefit of the contract but attempts to avoid what comes with it—that is the arbitration clause. *Id.* at 688 ("A nonsignatory party is estopped

8

from avoiding arbitration if it knowingly seeks the benefits of the contract containing the arbitration clause."). Without a direct benefit, Moran's express warranty claim would fail, as this Court previously held there needs to be contractual privity between Moran and JCI for Moran's express warranty claim to survive. *See F.E. Moran, Inc. v. Johnson Controls, Inc.*, No. 22-CV-06421, 2023 WL 6519975, at *6–7 (N.D. Ill. Oct. 5, 2023)(Coleman, J.)(explaining since Moran sufficiently alleged it received the direct benefit of the Agreement, its express warranty claim could survive JCI's motion to dismiss). Therefore, Moran is estopped from now avoiding arbitration and its express warranty claim is arbitrable.

The next question is whether Moran's defamation and disparagement claims fall within scope of the agreement. Here, the arbitration clause provides "any dispute, controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be submitted to a court of law or arbitrated." The Seventh Circuit has repeatedly held that "arising out of" language reaches all disputes deriving from the contract. *See Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress Int'l, Ltd.,* 1 F.3d 639, 642 (7th Cir. 1993). Such a clause covers claims related to the agreement, including torts. *See Gore*, 666 F.3d at 1036; *see also Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 910 (7th Cir. 1999) ("arbitration clause with the language 'arising out of or relating to' created a 'presumption of arbitrability' that extended to claims of tortious interference."). Being that some of Moran's claims are arbitrable, even if Moran's individual tort claims are not clearly within the scope of arbitration, the Court nonetheless compels arbitration, as "any doubt concerning the scope of the arbitration clause is resolved *in favor* of arbitration." *Gore*, 666 F.3d at 1032-33.

**Conclusion**

Pursuant to the FAA, this Court orders the parties to arbitrate Moran's claims. The case is stayed pending the outcome of arbitration. *See Smith v. Spizzirri*, 144 S. Ct. 1173, 1176 (2024).

IT IS SO ORDERED.

Date: 7/16/2024

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge